AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas
Harrison Division

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

INFORMATION ASSOCIATED WITH APPLE ACCOUNT
OF: ▮▮▮▮▮▮▮▮▮▮▮ @ICLOUD.COM THAT IS
STORED AT PREMISES CONTROLLED BY APPLE,
INC.

)
)
)
)
)
)

Case No. 3:23CM __ 01 __

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See "Attachment A". This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:
See "Attachment B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 2252 | Possession and Distribution of Child Pornography |
| 18 U.S.C. 2252A | |

The application is based on these facts:

☑ Continued on the attached sheet. See Affidavit of HSI S.A. Gerald Faulkner

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Gerald Faulkner - HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2.17.2023 @ 10:01am

*Judge's signature*

City and state: Fayetteville, Arkansas

Christy Comstock, United States Magistrate Judge
*Printed name and title*

### Affidavit in Support of Application for Search Warrant

I, Gerald Faulkner, being duly sworn, depose and state as follows:

1.    I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Resident Agent in Charge Office in Fayetteville, Arkansas. I have been so employed with HSI since April 2009. As part of my daily duties as an HSI Special Agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2251A, 2422(b), 2252(a) and 2252A. I have received training in the areas of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, a number of which involved child exploitation and/or child pornography offenses. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2.    As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3.    I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple") to disclose to the government records and other information, including the contents of communications, associated with the Apple ID ███████████@ICLOUD.COM that is stored at premises owned, maintained, controlled, or operated by Apple, a company

headquartered at 1 Infinite Loop, Cuppertino, CA. The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A and B.

4.      For the reasons stated below, there is probable cause to believe that the information described in Attachment A contains evidence, fruits and instrumentalities of violations of the following federal statutes: (1) Title 18, U.S.C. § 2252 (possession, receipt, and distribution of child pornography) and (2) Title 18 U.S.C. § 2252A (possession, receipt and distribution of child pornography), as described in Attachment B.

5.      The statements in this affidavit are based in part on information provided by HSI Special Agents, other law enforcement officers, and on my experience and background as a Special Agent. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## STATUTORY AUTHORITY

6.      18 U.S.C. § 2252 prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

7.      18 U.S.C. § 2252A prohibits a person from knowingly mailing, transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer,

2

or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.

## DEFINITIONS

8.      The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

9.      The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

10.      The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

11.      The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

12.      The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a)the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-

generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c)such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct

13.    The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

14.    "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

15.    "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies a particular computer on the Internet.  Every computer requires an IP address to connect to the Internet.  IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

16.    "Domain names" are common, easy to remember names associated with an IP address.  For example, a domain name of "www.usdoj.gov" refers to the IP address of

149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period.

17.    "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

## INFORMATION REGARDING APPLE DEVICES AND ICLOUD[1]

18.    Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

19.    Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage.

20.    Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

21.    iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

---

[1]    The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "iCloud: iCloud storage and backup overview," available at https://support.apple.com/kb/PH12519; and "iOS Security," available at http://images.apple.com/privacy/docs/iOS_Security_Guide.pdf.

22.     iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services and can also be used to store iOS device backups and data associated with third-party apps.

23.     iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs enables iCloud to be used to synchronize webpages opened in the Safari web browsers on all the user's Apple devices. iWorks Apps, a suite of productivity apps (Pages, Numbers, and Keynote), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

24.     Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

25.     Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.

26.     Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

27.     App Store and iTunes Store are used to purchase and download digital content.  iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS.  Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

28.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services, which are accessible from both Apple devices and laptop and desktop computers.  A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

29.     An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

30.     Apple captures information associated with the creation and use of an Apple ID.  During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on

Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

31.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

32.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications

between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

33.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWorks and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud.

## DETAILS OF INVESTIGATION

34.     In February 2023, HSI Special Agents assigned to the Internet Crimes Against Children (ICAC) Task Force, received a request for assistance from the Green Forest, Arkansas Police Department (GFPD) in reference to an ongoing child exploitation investigation involving a believed suspect holding a position of public trust. The following investigative information was provided to the HSI ICAC Task Force:

35.     On or about January 3, 2023, the GFPD was notified by representatives of the Green Forest, Arkansas School District of inappropriate online social media application messages, ranging from approximately November 2022 through January 2023, between a fifteen (15) year

old minor female student and a forty-five (45) year old male teacher. The teacher was identified as being Dustin LEE with a date of birth in 1977. LEE, also known as "Dusty Lee", was confirmed by law enforcement as being employed by the Green Forest, Arkansas School District as a high school English teacher. The GFPD was also able to confirm the 15-year-old minor female (VICTIM 1), with a date of birth in 2005, was a student in LEE's class.

36.     Green Forest, Arkansas School District representatives further turned over captured screenshots to law enforcement of conversations believed to be between LEE and VICTIM 1. A number of the captured screenshots had LEE's face contained within the images with associated texts or messages such as: "I like boobs and legs, but I also like you kiddo", "You can show me everything but I am still interested in you" and "Or just get me arrested".

37.     On or about January 6, 2023, VICTIM 1 was forensically interviewed by members of the Children's Advocacy Center located in Berryville, Arkansas. During the interview, VICTIM 1 disclosed LEE would "snap" (Snapchat) message her to hangout together outside of school hours. VICTIM 1 further disclosed LEE would make comments about her "boobs" and wanting to see them. According to VICTIM 1, LEE had also sent her a picture of himself when he was allegedly younger where he is naked, and his penis is exposed to the camera.

38.     On or about January 7, 2023, based on the disclosures made by VICTIM 1, GFPD Detectives made contact with LEE at his residence in Green Forest, Arkansas. During a post-Miranda interview, LEE denied sending any online messages to VICTIM 1. After being confronted about the aforementioned flagged screenshotted correspondence with VICTIM 1, LEE explained he abuses prescription medication and has never sent any "dick pics" to VICTIM 1. At the time of the conversation, LEE was found to be in possession of a cellular telephone which was seized by law enforcement.

39.     On or about January 9, 2023, LEE was encountered and arrested on state charges for violations of Arkansas Code Annotated, Sections 5-27-306 (Internet Stalking of a Child), 5-27-206 (Endangering the Welfare Of a Minor), and 5-14-125 (Sexual Assault in the 2nd Degree).

40.     Based on the investigative information, GFPD Detectives sought and obtained multiple state search warrants pertaining to LEE and VICTIM 1's social media accounts and seized cellular telephones.

41.     On or about January 19, 2023, while reviewing the content contained within LEE's social media applications and seized cellular telephone, it was discovered, beginning in approximately August 2021, he was sending a believed unknown minor female money via the mobile payment service, Cash App. It was later learned by GFPD Detectives that the minor female was a former student in the Green Forest, Arkansas School District and had since transferred to a new school in Missouri. Her date of birth is in 2005.

42.     On or about February 10, 2023, GFPD Detectives located and interviewed this minor female (VICTIM 2) who was recorded as having received money from LEE via Cash App. During a consensual interview, VICTIM 2 admitted she was a former student in LEE's classroom while she was attending school in Green Forest, Arkansas. VICTIM 2 stated LEE took "a weird interest" in her and at one point asked for her "Snap" (Snapchat) profile, which she provided to him. VICTIM 2 further admitted LEE would send her money through Cash App in exchange for nude pictures. She stated that, at his request, she would take pictures of herself that would "show all of her". VICTIM 2 confirmed LEE would ask for more naked pictures of her and she would comply by sending them to his Snapchat profile. According to VICTIM 2, after a period of time, LEE began constantly asking VICTIM 2 for additional naked images to where she eventually got aggravated with him and blocked his profile.

43.     VICTIM 2 explained she no longer had her Snapchat profile account from which she sent all the naked images to LEE but believed she had backed everything up to her personal iCloud account. However, VICTIM 2 stated she no longer had possession of the cellular telephone she previously used to setup and log into her iCloud account, and now cannot access that account. She did, however, verify that she never deleted the account. VICTIM 2 and her guardian were very cooperative and signed consent to search waivers for the iCloud account. They both also understood and acknowledged that, due to VICTIM 2's inability to access the iCloud account and provide the necessary account verification to Apple, law enforcement would have to seek and obtain a federal search warrant to access the potential evidence located and backed-up by Victim 2 to the account ████████████████@ICLOUD.COM.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

44.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

45.     Based on the forgoing, I request that the Court issue the proposed search warrant.

46.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."

47.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.


_____
Gerald Faulkner
Special Agent
Homeland Security Investigations


Sworn and subscribed before me this ⎢7 day of February , 2023.


_____
Honorable Christy Comstock
United States Magistrate Judge

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with

████████████████ **@ICLOUD.COM** (the "account") that is stored at premises owned,

maintained, controlled, or operated by:

Apple Inc., a company headquartered at Apple Inc., 1 Infinite Loop, Cupertino, CA 95014,

covering the time period of **January 1, 2019, until and including February 10, 2023**.

## ATTACHMENT B

### Particular Things to be Seized

I.      **Information to be disclosed by Apple**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, including any messages, records, files, logs, or information that has been deleted but are still available to Apple, or have been preserved pursuant to any request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, any password connected to the account, the methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

1

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

    c.    The contents of all emails associated with the account ███████████@ICLOUD.COM, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails) during the timeframe identified in Attachment A, the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

    d.    The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages) during the time frame identified in Attachment A, the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

    e.    The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWorks (including Pages, Numbers, and Keynote), iCloud Tabs, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), messaging logs (including iMessage, SMS, and MMS messages), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find my iPhone logs, logs associated with iOS device activation and upgrades, and logs associated with web-based access of Apple services (including all associated identifiers) covering the time period set out in Attachment A;

g.      All records and information regarding locations where the account was accessed, including all data stored in connection with Location Services for the time period set out in Attachment A;

h.      All records pertaining to the types of service used during the time period set out in Attachment A; and

i.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken during the time frame set out in Attachment A.

**II.     Information to be seized by the government**

All information described above in Section I, including correspondence, records, documents, photographs, videos, applications, communications, and electronic messages, passwords, or IP logs that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2252, and 2252A including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s) and the passwords listed on the account.

b. Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber during the time frame set out in Attachment A;

c. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

d. Evidence indicating the subscriber's state of mind as it relates to the crime under investigation, including internet searches for relevant programs or information;

e. Evidence that may identify potential witnesses for the above-listed crimes,

Including call logs, messages, pictures, and emails, establishing a time frame and that help reveal their whereabouts;

f. Records, documents, and image files taken with an apple device during the timeframe identified in Attachment A, which likewise corroborate the location of the device, including but not limited to any and all IP address logs and geolocation services and information available.

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the
Western District of Arkansas
Harrison Division

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. 3:23CM ☐ I |
| INFORMATION ASSOCIATED WITH APPLE ACCOUNT | ) | |
| OF: ▓▓▓▓▓▓@ICLOUD.COM THAT IS | ) | |
| STORED AT PREMISES CONTROLLED BY APPLE, | ) | |
| INC. | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Western_____ District of _____Arkansas_____ *(identify the person or describe the property to be searched and give its location)*:

See "Attachment A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See "Attachment B"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before      3·3·2023
                                                             *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge Christy Comstock                                      .
_____
            *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
                                                             ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  2·17·2023 @ 10:01 am                    *Christy Comstock* (signature)
                                                                        *Judge's signature*

City and state:  Fayetteville, Arkansas                    Christy Comstock, United States Magistrate Judge
                                                                        *Printed name and title*

| Return | | |
|---|---|---|
| Case No.:<br><br>  3:23CM_____ | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|
|      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br><br>Date: _____                  _____<br>                                                                                  *Executing officer's signature*<br><br>                                                     _____<br>                                                                                  *Printed name and title* |

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with

███████████████████@ICLOUD.COM (the "account") that is stored at premises owned,

maintained, controlled, or operated by:

Apple Inc., a company headquartered at Apple Inc., 1 Infinite Loop, Cupertino, CA 95014,

covering the time period of **January 1, 2019, until and including February 10, 2023**.

1

**ATTACHMENT B**

**Particular Things to be Seized**

I. **Information to be disclosed by Apple**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, including any messages, records, files, logs, or information that has been deleted but are still available to Apple, or have been preserved pursuant to any request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, any password connected to the account, the methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.     All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

1

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.      The  contents  of  all  emails  associated  with  the  account ████████████**@ICLOUD.COM**, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails) during the timeframe identified in Attachment A, the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.      The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages) during the time frame identified in Attachment A, the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWorks (including Pages, Numbers, and Keynote), iCloud Tabs, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.     All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), messaging logs (including iMessage, SMS, and MMS messages), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find my iPhone logs, logs associated with iOS device activation and upgrades, and logs associated with web-based access of Apple services (including all associated identifiers) covering the time period set out in Attachment A;

g.     All records and information regarding locations where the account was accessed, including all data stored in connection with Location Services for the time period set out in Attachment A;

h.     All records pertaining to the types of service used during the time period set out in Attachment A; and

i.     All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken during the time frame set out in Attachment A.

**II.     Information to be seized by the government**

All information described above in Section I, including correspondence, records, documents, photographs, videos, applications, communications, and electronic messages, passwords, or IP logs that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2252, and 2252A including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

3

a. The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s) and the passwords listed on the account.

b. Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber during the time frame set out in Attachment A;

c. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

d. Evidence indicating the subscriber's state of mind as it relates to the crime under investigation, including internet searches for relevant programs or information;

e. Evidence that may identify potential witnesses for the above-listed crimes,

Including call logs, messages, pictures, and emails, establishing a time frame and that help reveal their whereabouts;

f. Records, documents, and image files taken with an apple device during the timeframe identified in Attachment A, which likewise corroborate the location of the device, including but not limited to any and all IP address logs and geolocation services and information available.

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

## Return

Court Case No.: 3:23CM-01

Date and time warrant executed: 02/21/23 @ 0930 hours

Copy of warrant and inventory left with: N/A

Inventory made in the presence of: HSI SA Gerald Faulkner

Inventory of the property taken and name of any person(s) seized:

202300173169_production_20230317142126.zip

202300173169_production_20230317142126.zip (1)

202300173169_production_20230317142126.zip (2)

202300173169_production_20230317142126.zip (3)

202300173169_production_20230317142126.zip (4)

202300173169_production_20230317142126.zip (5)

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 03/29/23

GERALD F FAULKNER JR  Digitally signed by GERALD F FAULKNER JR
Date: 2023.03.29 13:00:41 -05'00'

*Executing officer's signature*

Gerald Faulkner, HSI Special Agent

*Printed name and title*

Subscribed, sworn to, and returned before me this date.

Date    Christy Comstock    **U.S. Judge or Magistrate**

U.S. Magistrate Judge

Returned by electronic mail on this 4 day of April, 20 23.

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### HARRISON DIVISION

| | | |
|---|---|---|
| **IN RE SEARCH OF:** | ) | |
| | ) | **Case No. 3:23-CM-01** |
| **Information Associated with Apple Account of:** | ) | |
| ███████████████ **@icloud.com** that is Stored | ) | |
| **At Premises Controlled by Apple, Inc.** | ) | |

## UNITED STATES' MOTION TO SEAL SEARCH WARRANT, APPLICATION AND SEARCH WARRANT AFFIDAVIT

The United States of America requests an Order of the Court sealing this Motion, the Search Warrant, the Application for Search Warrant, the Search Warrant Affidavit, the Inventory Return, and the Order to Seal, in the above captioned and numbered matter. In making this request to seal the search warrant papers, the United States relies on the facts and statements set forth in, or on the face of, all of the search warrant papers and this motion, including the Affidavit for the Search Warrant. As set forth in the search warrant papers, this matter relates to an ongoing investigation of allegations of possession and distribution of child pornography in violation of Title 18 U.S.C. § § 2252 and 2252(A). The investigation has not yet resulted in the filing of an Indictment or Criminal Complaint. The search warrant papers disclose details concerning the investigation and specific investigatory actions taken by law enforcement officers to investigate these allegations. Additionally, the name of the Apple account at issue here includes the name and year of birth of a minor victim.

### A. The Affidavit, Application, Search Warrant And Return Should Be Sealed

The government has a compelling interest in maintaining the integrity of an ongoing

1

criminal investigation by denying public access to the details of the ongoing criminal investigation in this matter. The interest of the United States in this regard has been recognized by the United States Court of Appeals for the Eighth Circuit. <u>Certain Interested Individuals v. Pulitzer Publishing Company</u>, 895 F.2d 460 (8th Cir. 1990)(<u>Gunn II</u>); <u>In re Search Warrant for Secretarial Area Outside Office of Gunn</u>, 855 F.2d 569, 574 (8th Cir. 1988)(<u>Gunn I</u>). The current investigation is ongoing and disclosure of the Application, Affidavit, Search Warrant and Return would provide details of the nature, scope and direction of the government's criminal investigation in this matter and would identify the subject(s) of the investigation. Revelation of this material would not only make it available to the general public but to the potential subject(s) of the investigation. Finally, disclosure of an unsealed version of the Application, Affidavit, Search Warrant and Return would identify the name and year of birth of a minor victim.

As stated above, this investigation is in the pre-indictment stages. No indictments have been returned and no charges have been filed against any person by complaint or otherwise.

**B. No Less Restrictive Means are Available**

General Order 7 requires that the Government address why less restrictive means to sealing all search warrant documents are not available. Less restrictive means may include redaction of names and personally identifying information, line-by-line redaction of facts and events, or extraction of excerpts from search warrant documents. Courts have ruled that these less restrictive means do not adequately protect the interests of the government or individuals in a number of instances.

1. The Eighth Circuit in <u>Gunn I</u> explains that "line-by-line redaction is not practicable," noting that "[v]irtually every page contains multiple references to wiretapped telephone

conversations or to individuals other than the subjects of the search warrants or reveals the nature, scope and direction of the government's ongoing investigation." Gunn I, 855 F.2d at 574.

2. Less restrictive means are not sufficient to protect privacy interests of individuals named in the search warrant documents. Courts have held that redaction of individuals names does not "protect the identities of various individuals due to the context in which they are mentioned." In re Search Warrant for 2934 Anderson Morris Road Niles, Ohio, 48 F. Supp. 1082, 1084 (N.D. Ohio 1999). This protection of individuals identifiable through "context" is followed by the Eighth Circuit in Gunn II. In Gunn II, the Eighth Circuit continued to maintain the seal of the documents in Gunn I, as the privacy interest of individuals named in "even the redacted versions of the search warrant affidavits" outweighed the public's First Amendment qualified right of access. See, Gunn II, 895 F.2d at 466.

3. Less restrictive means of extracting excerpts is not an effective alternative to sealing the entire document where it contains "detailed, specific information which, if disclosed, would compromise the ongoing government investigation." In the Matter of the Search of Office Suites for World and Islam Studies, 925 F. Supp. 738, 743-44 (M.D. Fla. 1996). In the Matter of the Search of Office Suites for World and Islam Studies, the district court found that the affidavits are "designed to support probable cause and each section builds on the next", and "[v]irtually every page of the affidavit contains references to conversations and events, and reveals the nature and scope of the on-going government investigation, including individuals not the subject of the search warrant." Id. at 744. Further the court found that extraction of excerpts was inadequate to protect the government's interests, as "even a portion of the affidavit would reveal, either explicitly or by inference, the scope and direction of the Government's investigation." Id.

3

WHEREFORE, for each of the above reasons, the United States respectfully requests that the Court enter an order which: (1) seals this motion pending further order of the Court; (2) seals the search warrant, the application for the search warrant, the affidavit in support of the application, the inventory return, and the order to seal under the provisions outlined in General Order 7.

Respectfully submitted,

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

*/s/ Devon Still*

By

Devon Still
Assistant U.S. Attorney
Arkansas Bar No. 2005257
414 Parker Avenue
Fort Smith, AR   72901
Telephone: 479-783-5125

4

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### HARRISON DIVISION

IN RE SEARCH OF:                )
                                )        Case No. **3:23-CM-01**
                                )

## ORDER TO SEAL SEARCH WARRANT PAPERS

The United States of America has filed a Motion to seal the Search Warrant, the Application for Search Warrant, the Search Warrant Affidavit, the Inventory Return, its Motion to Seal, this Order, and all other pertinent search warrant papers in the above captioned and numbered matter.

The COURT finds that the above described papers should be and they are, hereby sealed under the provision of the United States District Court for the Western District of Arkansas General Order 7. The Court finds, as established in the United States Motion to Seal, that there exist compelling interests that outweigh the public's qualified First Amendment right of access and, FURTHER, that no less restrictive alternative to sealing is appropriate or practical.

Dated this 4 day of April , 2023.

HONORABLE CHRISTY D. COMSTOCK
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### HARRISON DIVISION

IN RE SEARCH OF:               )

                                  )     **Case No. 3:23-CM-01**

**Information Associated with Apple Account of:**  )

██████████████ **@icloud.com** that is Stored  )

**At Premises Controlled by Apple, Inc.**       )

## UNITED STATES' SECOND MOTION TO SEAL SEARCH WARRANT, APPLICATION AND SEARCH WARRANT AFFIDAVIT

The United States of America requests an Order of the Court sealing this Motion, the Search Warrant, the Application for Search Warrant, the Search Warrant Affidavit, the Inventory Return, and the Order to Seal, in the above captioned and numbered matter. In making this second request to seal the search warrant papers, the United States relies on the facts and statements set forth in, or on the face of, all of the search warrant papers and this motion, including the Affidavit for the Search Warrant. As set forth in the search warrant papers, this matter relates to an ongoing investigation of allegations of possession and distribution of child pornography in violation of Title 18 U.S.C. § § 2252 and 2252(A). The investigation has not yet resulted in the filing of an Indictment or Criminal Complaint. The search warrant papers disclose details concerning the investigation and specific investigatory actions taken by law enforcement officers to investigate these allegations. Additionally, the name of the Apple account at issue here includes the name and year of birth of a minor victim.

### A.  The Affidavit, Application, Search Warrant And Return Should Be Sealed

The government has a compelling interest in maintaining the integrity of an ongoing

criminal investigation by denying public access to the details of the ongoing criminal investigation in this matter. The interest of the United States in this regard has been recognized by the United States Court of Appeals for the Eighth Circuit. <u>Certain Interested Individuals v. Pulitzer Publishing Company</u>, 895 F.2d 460 (8th Cir. 1990)(<u>Gunn II</u>); <u>In re Search Warrant for Secretarial Area Outside Office of Gunn</u>, 855 F.2d 569, 574 (8th Cir. 1988)(<u>Gunn I</u>). The current investigation is ongoing and disclosure of the Application, Affidavit, Search Warrant and Return would provide details of the nature, scope and direction of the government's criminal investigation in this matter and would identify the subject(s) of the investigation. Revelation of this material would not only make it available to the general public but to the potential subject(s) of the investigation. Finally, disclosure of an unsealed version of the Application, Affidavit, Search Warrant and Return would identify the name and year of birth of a minor victim.

As stated above, this investigation is in the pre-indictment stages. No indictments have been returned and no charges have been filed against any person by complaint or otherwise.

**B. No Less Restrictive Means are Available**

General Order 7 requires that the Government address why less restrictive means to sealing all search warrant documents are not available. Less restrictive means may include redaction of names and personally identifying information, line-by-line redaction of facts and events, or extraction of excerpts from search warrant documents. Courts have ruled that these less restrictive means do not adequately protect the interests of the government or individuals in a number of instances.

1. The Eighth Circuit in <u>Gunn I</u> explains that "line-by-line redaction is not practicable," noting that "[v]irtually every page contains multiple references to wiretapped telephone

2

conversations or to individuals other than the subjects of the search warrants or reveals the nature, scope and direction of the government's ongoing investigation."  Gunn I, 855 F.2d at 574.

2.  Less restrictive means are not sufficient to protect privacy interests of individuals named in the search warrant documents.  Courts have held that redaction of individuals names does not "protect the identities of various individuals due to the context in which they are mentioned."  In re Search Warrant for 2934 Anderson Morris Road Niles, Ohio, 48 F. Supp. 1082, 1084 (N.D. Ohio 1999).  This protection of individuals identifiable through "context" is followed by the Eighth Circuit in Gunn II.  In Gunn II, the Eighth Circuit continued to maintain the seal of the documents in Gunn I, as the privacy interest of individuals named in "even the redacted versions of the search warrant affidavits" outweighed the public's First Amendment qualified right of access.  See, Gunn II, 895 F.2d at 466.

3.  Less restrictive means of extracting excerpts is not an effective alternative to sealing the entire document where it contains "detailed, specific information which, if disclosed, would compromise the ongoing government investigation."  In the Matter of the Search of Office Suites for World and Islam Studies, 925 F. Supp. 738, 743-44 (M.D. Fla. 1996).  In the Matter of the Search of Office Suites for World and Islam Studies, the district court found that the affidavits are "designed to support probable cause and each section builds on the next", and "[v]irtually every page of the affidavit contains references to conversations and events, and reveals the nature and scope of the on-going government investigation, including individuals not the subject of the search warrant."  Id. at 744.  Further the court found that extraction of excerpts was inadequate to protect the government's interests, as "even a portion of the affidavit would reveal, either explicitly or by inference, the scope and direction of the Government's investigation."  Id.

3

WHEREFORE, for each of the above reasons, the United States respectfully requests that the Court enter an order which: (1) seals this motion pending further order of the Court; (2) seals the search warrant, the application for the search warrant, the affidavit in support of the application, the inventory return, and the order to seal under the provisions outlined in General Order 7.

Respectfully submitted,

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

*/s/ Devon Still*

By

Devon Still
Assistant U.S. Attorney
Arkansas Bar No. 2005257
414 Parker Avenue
Fort Smith, AR   72901
Telephone: 479-783-5125

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HARRISON DIVISION

| | | |
|---|---|---|
| **IN RE SEARCH OF:** | ) | |
| | ) | **Case No. 3:23-CM-01** |
| **Information Associated with Apple Account of:** | ) | |
| ▓▓▓▓▓▓▓▓▓▓ **@icloud.com that is Stored** | ) | |
| **At Premises Controlled by Apple, Inc.** | ) | |

## ORDER TO SEAL SEARCH WARRANT PAPERS

The United States of America has filed a Second Motion to Seal the Search Warrant, the

Application for Search Warrant, the Search Warrant Affidavit, the Inventory Return, its Motion to

Seal, this Order, and all other pertinent search warrant papers in the above captioned and numbered

matter.

The COURT finds that the above described papers should be and they are, hereby sealed

under the provision of the United States District Court for the Western District of Arkansas General

Order 7. The Court finds, as established in the United States Motion to Seal, that there exist

compelling interests that outweigh the public's qualified First Amendment right of access and,

FURTHER, that no less restrictive alternative to sealing is appropriate or practical.

Dated this _5th_ day of June, 2023.

HONORABLE CHRISTY D. COMSTOCK
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HARRISON DIVISION

IN RE SEARCH OF:                                    )
                                                    )    Case No. **3:23-CM-01**
**Information Associated with Apple Account of:**   )
███████████████ **@icloud.com** that is Stored     )
**At Premises Controlled by Apple, Inc.**           )

## UNITED STATES' THIRD MOTION TO SEAL SEARCH WARRANT, APPLICATION AND SEARCH WARRANT AFFIDAVIT

The United States of America requests an Order of the Court sealing this Motion, the Search Warrant, the Application for Search Warrant, the Search Warrant Affidavit, the Inventory Return, and the Order to Seal, in the above captioned and numbered matter.   In making this third request to seal the search warrant papers, the United States relies on the facts and statements set forth in, or on the face of, all of the search warrant papers and this motion, including the Affidavit for the Search Warrant.   As set forth in the search warrant papers, this matter relates to an ongoing investigation of allegations of possession and distribution of child pornography in violation of Title 18 U.S.C. § § 2252 and 2252(A). The investigation has not yet resulted in the filing of an Indictment or Criminal Complaint. The search warrant papers disclose details concerning the investigation and specific investigatory actions taken by law enforcement officers to investigate these allegations.   Additionally, the name of the Apple account at issue here includes the name and year of birth of a minor victim.

### A.  The Affidavit, Application, Search Warrant And Return Should Be Sealed

The government has a compelling interest in maintaining the integrity of an ongoing

1

criminal investigation by denying public access to the details of the ongoing criminal investigation in this matter. The interest of the United States in this regard has been recognized by the United States Court of Appeals for the Eighth Circuit. <u>Certain Interested Individuals v. Pulitzer Publishing Company</u>, 895 F.2d 460 (8th Cir. 1990)(<u>Gunn II</u>); <u>In re Search Warrant for Secretarial Area Outside Office of Gunn</u>, 855 F.2d 569, 574 (8th Cir. 1988)(<u>Gunn I</u>). The current investigation is ongoing and disclosure of the Application, Affidavit, Search Warrant and Return would provide details of the nature, scope and direction of the government's criminal investigation in this matter and would identify the subject(s) of the investigation. Revelation of this material would not only make it available to the general public but to the potential subject(s) of the investigation. Finally, disclosure of an unsealed version of the Application, Affidavit, Search Warrant and Return would identify the name and year of birth of a minor victim.

As stated above, this investigation is in the pre-indictment stages. No indictments have been returned and no charges have been filed against any person by complaint or otherwise.

**B. No Less Restrictive Means are Available**

General Order 7 requires that the Government address why less restrictive means to sealing all search warrant documents are not available. Less restrictive means may include redaction of names and personally identifying information, line-by-line redaction of facts and events, or extraction of excerpts from search warrant documents. Courts have ruled that these less restrictive means do not adequately protect the interests of the government or individuals in a number of instances.

1. The Eighth Circuit in <u>Gunn I</u> explains that "line-by-line redaction is not practicable," noting that "[v]irtually every page contains multiple references to wiretapped telephone

conversations or to individuals other than the subjects of the search warrants or reveals the nature, scope and direction of the government's ongoing investigation." Gunn I, 855 F.2d at 574.

2. Less restrictive means are not sufficient to protect privacy interests of individuals named in the search warrant documents. Courts have held that redaction of individuals names does not "protect the identities of various individuals due to the context in which they are mentioned." In re Search Warrant for 2934 Anderson Morris Road Niles, Ohio, 48 F. Supp. 1082, 1084 (N.D. Ohio 1999). This protection of individuals identifiable through "context" is followed by the Eighth Circuit in Gunn II. In Gunn II, the Eighth Circuit continued to maintain the seal of the documents in Gunn I, as the privacy interest of individuals named in "even the redacted versions of the search warrant affidavits" outweighed the public's First Amendment qualified right of access. See, Gunn II, 895 F.2d at 466.

3. Less restrictive means of extracting excerpts is not an effective alternative to sealing the entire document where it contains "detailed, specific information which, if disclosed, would compromise the ongoing government investigation." In the Matter of the Search of Office Suites for World and Islam Studies, 925 F. Supp. 738, 743-44 (M.D. Fla. 1996). In the Matter of the Search of Office Suites for World and Islam Studies, the district court found that the affidavits are "designed to support probable cause and each section builds on the next", and "[v]irtually every page of the affidavit contains references to conversations and events, and reveals the nature and scope of the on-going government investigation, including individuals not the subject of the search warrant." Id. at 744. Further the court found that extraction of excerpts was inadequate to protect the government's interests, as "even a portion of the affidavit would reveal, either explicitly or by inference, the scope and direction of the Government's investigation." Id.

3

WHEREFORE, for each of the above reasons, the United States respectfully requests that the Court enter an order which: (1) seals this motion pending further order of the Court; (2) seals the search warrant, the application for the search warrant, the affidavit in support of the application, the inventory return, and the order to seal under the provisions outlined in General Order 7.

Respectfully submitted,

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

*/s/ Devon Still*

By:    Devon Still
       Assistant U.S. Attorney
       Arkansas Bar No. 2005257
       414 Parker Avenue
       Fort Smith, AR 72901
       Telephone: 479-783-5125

4

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HARRISON DIVISION

IN RE SEARCH OF:                                )
                                                )    Case No. **3:23-CM-01**
**Information Associated with Apple Account of:** )
        ▮▮▮▮▮▮▮▮▮▮**@icloud.com that is Stored** )
**At Premises Controlled by Apple, Inc.**       )

## ORDER TO SEAL SEARCH WARRANT PAPERS

The United States of America has filed a Third Motion to Seal the Search Warrant, the

Application for Search Warrant, the Search Warrant Affidavit, the Inventory Return, its Motion to

Seal, this Order, and all other pertinent search warrant papers in the above captioned and numbered

matter.

The COURT finds that the above described papers should be and they are, hereby sealed

under the provision of the United States District Court for the Western District of Arkansas General

Order 7. The Court finds, as established in the United States Motion to Seal, that there exist

compelling interests that outweigh the public's qualified First Amendment right of access and,

FURTHER, that no less restrictive alternative to sealing is appropriate or practical.

Dated this 3rd day of August, 2023.

HONORABLE CHRISTY D. COMSTOCK
UNITED STATES MAGISTRATE JUDGE